# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

TONYA A. CARNAHAN,  )
                                     )
        Plaintiff,  )
                                       )
v.  )        Case No. 1:16-CV-398
                                       )
COMMISSIONER OF SOCIAL SECURITY,  )
                                     )
        Defendant.  )
                                       )

## OPINION AND ORDER

This matter is before the Court for review of a final decision by the Commissioner denying an award of benefits to the Plaintiff, Tonya A. Carnahan. Carnahan filed her opening brief on May 26, 2017 (ECF 12), along with a summary of her medical history (ECF 12-1). On July 27, 2017, the Commissioner filed a memorandum in support of the decision by the Administrative Law Judge to deny benefits (ECF 17). Carnahan chose not to file a reply. The official Social Security Administrative Record, filed pursuant to 42 U.S.C. § 405(g), appears at ECF 5.[1] For the reasons explained below, the decision of the ALJ is **AFFIRMED**.

## PROCEDURAL HISTORY

Plaintiff Tonya Carnahan applied for Social Security Disability benefits (SSD) and Supplemental Security Income benefits (SSI) on July 16, 2014, alleging "an onset of disability of May 16, 2012." Plaintiff's Brief, p. 2 (citing transcript of administrative record (ECF 5)), pp. 90-91, 209-216. "Her applications were denied initially . . . and after reconsideration." *Id.* (citing Tr.,

---

[1] Section 405(g) of the Act mandates that "the Commissioner . . . shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based."

pp. 114-131, 134-147). Carnahan requested and was granted a hearing before Administrative

Law Judge William D. Pierson, which was held on March 1, 2016. *Id*. Carnahan explains in her

brief that "[a]t the hearing, Ms. Carnahan amended her onset to November 20, 2013." *Id*. (citing

Tr., pp. 47-48, 23). Carnahan "appeared and testified at [the] hearing . . . , as did a vocational

expert." Commissioner's Response, p. 1. The ALJ concluded that Carnahan was not disabled and

issued a decision on July 20, 2016, explaining his reasoning. Plaintiff's Brief, p. 2 (citing Tr., pp.

14-40). Carnahan then "requested review of the ALJ's decision by the Appeals Council . . . [but]

the Appeals Council denied review on September 20, 2016." *Id*. (citing Tr., pp. 1-6). That denial

rendered the ALJ's decision final, and Carnahan now seeks review by this Court pursuant to 42

U.S.C. §§ 405(g) and 1383(c)(3) "request[ing] that the decision of the Commissioner be reversed

for an award of benefits." *Id*., p. 15. Carnahan argues that "[a]lternatively, the claim should be

remanded for a new hearing and decision[.]" *Id*.

## STANDARD OF REVIEW

As this Court has explained, the Social Security Act authorizes judicial review of a final

decision denying benefits, but also provides that an ALJ's findings must be accepted as

conclusive if supported by substantial evidence. *Visinaiz v. Berryhill*, 243 F.Supp.3d 1008, 1011

(N.D. Ind. 2017). "Thus, a court reviewing the findings of an ALJ will reverse only if the

findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal

standard." *Id*. (citing *Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005)). Substantial

evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Id*. (citations omitted).

Importantly, the district court "reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ." *Id.* (citing *Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999)). The question on judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "'uses the correct legal standards and the decision is supported by substantial evidence.'" *Id.* at 1011-12 (quoting *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) and citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "'[I]f the Commissioner commits an error of law,' the Court may reverse the decision 'without regard to the volume of evidence in support of the factual findings.'" *Id.* at 1012 (quoting *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999)). Put another way, this Court must review an ALJ's findings and conclusions to ensure that they are not contrary to applicable law and that the ALJ adequately explains the reasoning for those conclusions. As Magistrate Judge Martin explained in *Visinaiz*:

> At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d

881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

*Id.* With this standard firmly in mind, the Court concludes that the ALJ's decision in this case must be affirmed for the reasons discussed below.

## DISCUSSION

The ALJ made the following findings of fact and conclusions in this case:

1. Carnahan "has not engaged in substantial gainful activity since November 20, 2013 . . . , the amended alleged onset date[.]" ALJ Decision (Tr., p. 25);

2. Carnahan "has the following severe impairments: disorders of the neck and back (degenerative changes in the cervical and lumbar spine, and sacroiliac joint arthritis), chronic pain disorder, obesity, complex partial seizure disorder, and migraines[.]" *Id.*;

3. Carnahan "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" under the Act. *Id.*, p. 27;

4. Carnahan "has the residual function capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) (lifting, carrying, pushing, and pulling 10 pounds frequently and 20 pounds occasionally and, in an eight-hour period, sitting or standing/walking for a total of at least 6 hours each) except that she cannot climb ropes, ladders, or scaffolds and she can only occasionally kneel, crouch, crawl, and balance. She can also occasionally bend and stoop in addition to what is required to sit. She can occasionally use ramps and stairs but, aside from use of ramps and stairs on an occasional basis, the claimant should not work [on] uneven surfaces. The claimant should avoid concentrated exposure to wetness, such as when working [on] wet and slippery surfaces. She also needs to avoid work within close proximity to open and exposed

heights and open and dangerous machinery, such as open flames and fast moving exposed blades. She further needs to avoid work involving concentrated exposure to vibration, such as using heavy sanders, and she is limited from concentrated exposure to excessive airborne particulate, dusts, fumes, and gases and excessive heat, humidity, and cold, such as when working outside or within a sawmill, boiler room, chemical plant, green house, refrigerator, or sewage plant. She needs to avoid work within close proximity to very loud noises, such as fire alarms, and very bright/flashing lights, such as a strobe, more than occasionally. The claimant is also not able to engage in overhead work and overhead reaching. She is further limited to work within a low stress job, defined as requiring only occasional decision-making and only occasional changes in the work setting. She can tolerate predictable changes in the work environment and meet production requirements in an environment that allows her to sustain a flexible and goal-oriented pace. She is limited from fast-paced work, such as assembly line production work with rigid or strict productivity requirements. The claimant is limited to work that involves only simple, routine, and repetitive tasks that can be learned through short demonstration and up to 30 days. She can maintain the concentration required to perform simple tasks, remember simple work-like procedures, and make simple work-related decisions. The work she can perform will require little or no judgment to perform simple duties, consistent with the reasoning levels 1, 2, and 3 as defined [in] the Dictionary of Occupational Titles and SVP levels of 1 and 2 as rated by the SCO. *Id*., p. 29;

5. Carnahan "is unable to perform any past relevant work . . . . The claimant has past relevant work as a cashier/stocker (semi-skilled, heavy work) . . . . Because she is able to perform only a reduced range of light work, she is not able to perform her past relevant work. This is consistent

with the vocational expert's testimony." *Id*., p. 35;

6. Carnahan "was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date[.]" *Id*.

7. Carnahan "has at least a high school education and is able to communicate in English[.]" *Id*.;

8. "Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform[.]" *Id*., p. 36; and

9. Carnahan "has not been under a disability, as defined by the Social Security Act, from November 20, 2013, through the date of this decision[.]" *Id*.

The ALJ concluded that the medical evidence Carnahan submitted in support of her claim was insufficient "to establish that the symptoms argued are supportive of alleged severity of condition and symptoms." *Id*., pp. 33-34. That conclusion was based in part on the ALJ's determination that the medical opinions of Dr. Shantanu Kulkarni, claimant's treating physician, were inconsistent with the rest of the medical evidence (including the opinions of the two non-treating physicians). Because of those inconsistencies the ALJ refused to give Dr. Kulkarni's opinions controlling weight when determining whether Carnahan was entitled to benefits. This is Carnahan's first point of contention–that the ALJ improperly gave too much weight to the opinions of non-treating physicians and too little to Dr. Kulkarni's opinions. Carnahan contends that the ALJ incorrectly concluded that Dr. Kulkarni's opinions were inconsistent with other medical evidence and that they contained internal inconsistencies. Indeed, the ALJ stated quite unequivocally that "many factors significantly undermine any weight that could have been accorded to Dr. Kulkarni's opinion." *Id*., p. 35. Carnahan contends that was error.

The ALJ also found that Carnahan's own testimony "concerning the intensity, persistence and limiting effects of [her] symptoms [was] not entirely consistent with the medical and other evidence of record . . ." and that "the . . . objective medical findings and facts indicate severe conditions, but appear inconsistent with, or unsupportive of, allegations for greater limitations of function than those reflected in the residual functional capacity." *Id.*, pp. 31, 33. In other words, the ALJ did not find Carnahan's testimony entirely credible–which she also argues was error. Thus, Carnahan's challenge to the ALJ's decision is twofold. First, she argues that "the ALJ failed to properly weigh the medical opinion evidence[,]" and second she contends that "[t]he ALJ failed to properly evaluate Ms. Carnahan's testimony" regarding her symptoms and their limiting effects. Plaintiff's Brief, generally.

**I. ALJ's assessment of medical opinion evidence.**

Carnahan argues that the ALJ "gave little weight to the opinions from treating board-certified physiatrist Dr. Kulkarni[,]" who was Carnahan's treating physician, and "[i]nstead . . . gave 'significant weight' to the opinions from non-examining state agency medical consultants[.]" *Id.*, p. 8. Carnahan contends that the ALJ erred by placing too much significance on the opinions of medical experts who never examined her and too little on the opinions of Dr. Kulkarni, who did examine and treat her. *Id.* Carnahan argues that "[t]he ALJ's conclusion that the opinions from treating specialist Dr. Kulkarni are unsupported by sufficient clinical or objective evidence . . . is contradicted by the record." *Id.* Carnahan maintains that the ALJ's conclusion was flat out wrong and that Dr. Kulkarni's "findings are wholly consistent with treatment records, which consistently documented limited motion and tenderness in the spine, and positive orthopedic maneuvers[.]" *Id.* (citations to record omitted). Carnahan notes that "Dr.

Kulkarni stated that his opinions were based on MRIs of the cervical and lumbar spine and x-rays of the lumbar spine, as well as clinical evidence of decreased range of motion in the cervical and lumbar spine, constant pain in the neck radiating to the shoulders, and lower back pain with radiating and tingling into the legs . . . . These findings are wholly consistent with treatment records, which consistently documented limited motion and tenderness in the spine, and positive orthopedic maneuvers[.]" *Id.* (citations to record omitted).

The Commissioner argues that "the ALJ provided good reasons for discounting Dr. Kulkarni's inconsistent opinions . . . [and] the ALJ's analysis is supported by substantial evidence." Commissioner's Response, p. 3. The Commissioner maintains that "the ALJ provided two principal reasons for discounting the opinion of Dr. Kulkarni . . . . First, Dr. Kulkarni's extremely limiting restrictions were well out-of-sync with the evidence, including the doctor's own findings . . . . Likewise, Dr. Kulkarni's limitations were plainly rebutted by Plaintiff's own testimony . . . . As Courts will uphold all but the most patently erroneous reasons for discounting a treating source, the ALJ's decision should stand." *Id.*, p. 4. The Commissioner argues that the ALJ was correct to place greater weight on the opinions of non-treating physicians in this case since "Dr. Kulkarni's opinion differed incredibly from the other opinions of record. The two other opinions of record in addition to that of Dr. Kulkarni–those of State agency medical consultants J.V. Corcoran, M.D. and M. Brill, M.D.–each released Plaintiff to the full range of light work . . . . While the ALJ accorded significant weight to these doctors, he did not stop there, and instead added a litany of restrictions addressing Plaintiff's postural, environmental, mental, and reaching limitations . . . . A review of the medical evidence shows findings far more in-sync with those of Drs. Corcoran and Brill than that of Dr. Kulkarni, thus the ALJ's analysis was

proper." *Id*. The Commissioner also contends that "the ALJ noted that Dr. Kulkarni's opinions were incompatible with one another[,]" because "[i]nitially the orthopedist found in October 2014 that Plaintiff was so restricted that she could carry no weight whatsoever, could sit for a mere two hours, could do no reaching, and would miss more than three days of work per month . . . . A mere four months later, Dr. Kulkarni revised his assessment to allow for lifting of ten pounds, sitting for four hours, missing work two or three times a month, and entirely discarding any and all reaching limitations (*Compare* Tr. 730-32 *with* Tr. 509-11)." *Id*., p. 5.

An ALJ must consider the opinions of both treating and non-treating physicians and decide which to assign greater significance. As another district court explained:

> If a non-treating physician contradicts the treating physician's opinion, it is the ALJ's responsibility to resolve the conflict. *Books* [*v. Chater*], 91 F.3d [972], 979 [(7th Cir.1996)] (ALJ must decide which doctor to believe). An ALJ may reject the opinion of a treating physician in favor of the opinion of a non-treating physician where the non-treating physician has special, pertinent expertise and where the issue is one of interpretation of records or results rather than one of judgment based on observations over a period of time. *Micus v. Bowen*, 979 F.2d 602, 608 (7th Cir. 1992) ("[I]t is up to the ALJ to decide which doctor to believe–the treating physician who has experience and knowledge of the case, but may be biased, or . . . the consulting physician, who may bring expertise and knowledge of similar cases–subject only to the requirement that the ALJ's decision be supported by substantial evidence."); *Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006) ("So the weight properly to be given to testimony or other evidence of a treating physician depends on circumstances."). In sum, "whenever an ALJ does reject a treating source's opinion, a sound explanation must be given for that decision." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) (citing 20 C.F.R. § 404.1527(d)(2)). It is well-established that "[i]f an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, *and the consistency and supportability of the physician's opinion*." *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011).

*Suess v. Colvin*, 945 F.Supp.2d 920, 932-33 (N.D. Ill. 2013) (italics added). "It is

well-established that a treating physician, even a physician with a relatively short treatment relationship with his patient, usually is more familiar with a claimant's condition than a reviewing physician who never met or examined the claimant . . . and, therefore, is in a better position to assess his limitations." *Minett v. Colvin*, 2015 WL 7776560, at *4 (N.D. Ill. Dec. 2, 2015) (citing *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) and *Suess*, 945 F.Supp.2d at 932 (N.D. Ill. 2013)).

In the present case, the ALJ discounted Dr. Kulkarni's findings and opinions, concluding that the medical evidence as a whole supported, and was more consistent with, the opinions of non-treating physicians. This Court's duty is to determine whether the ALJ articulated a logical and reasonable basis for his decision. Carnahan contends that he didn't–and that in fact his decision to discount Dr. Kulkarni's opinions was contrary to law. Carnahan directs the Court's attention to the case of *Scrogham v. Colvin*, in which the Seventh Circuit explained that "an ALJ should 'give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant].'" *Scrogham*, 765 F.3d 685, 696 (7th Cir. 2014) (quoting 20 C.F.R. § 404.1527(c)(1)). For this reason, argues Carnahan, the ALJ should have credited Dr. Kulkarni's opinions over those of the non-treating physicians since it was Dr. Kulkarni who personally examined and treated her. She elaborates on her argument by quoting the following passage from *Scrogham*:

> Even when an ALJ decides not to give controlling weight to a treating physician's opinion, the ALJ is not permitted simply to discard it. Rather, the ALJ is required by regulation to consider certain factors in order to decide how much weight to give the opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination," because the longer a treating physician has seen a claimant, and particularly if the treating physician has seen a claimant "long enough to have obtained a longitudinal picture" of the impairment, the more weight his opinion

deserves; (2) the "[n]ature and extent of the treatment relationship"; (3) "*[s]upportability*," i.e., whether a physician's opinion is supported by relevant evidence, such as "medical signs and laboratory findings"; (4) *consistency* "with the record as a whole"; and (5) whether the treating physician was a specialist in the relevant area. 20 C.F.R. § 404.1527(c)(2)-(5) (italics added).

Plaintiff's Brief, p. 6 (quoting *Scrogham*, 765 F.3d at 697). But in this case the ALJ did not "discard" Dr. Kulkarni's opinions at all, nor did he ignore the fact that Dr. Kulkarni examined and treated Carnahan on several occasions. Rather, he reviewed and considered Dr. Kulkarni's opinions as he was required to do, and concluded that they were unsupported by the rest of the medical evidence presented and even inconsistent with Carnahan's own testimony. If he had a reasonable basis for this conclusion then Carnahan's argument fails, since even the *Scrogham* case makes clear that an ALJ can discount a treating physician's opinions if he or she determines that those opinions are inconsistent "with the record as a whole." Again, the Commissioner counters that the ALJ properly discounted Dr. Kulkarni's opinions because "Dr. Kulkarni's extremely limiting restrictions were well out-of-sync with the evidence," and because "Dr. Kulkarni's limitations were plainly rebutted by Plaintiff's own testimony." Commissioner's Response, p. 4. Furthermore, argues the Commissioner, "[a]n ALJ is not required to 'blindly accept' a treating physician's opinion, and 'may discount a treating physician's medical opinion if the opinion is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons' for doing so." *Id*. (quoting *Schreiber v. Colvin*, 519 F.App'x 951, 958 (7th Cir. 2013)).

In this case, the ALJ reviewed and considered the medical evidence as a whole, including the opinions of Dr. Kulkarni, Dr. Corcoran and Dr. Brill, and explained his decision to discount Dr. Kulkarni's opinions due to their inconsistency with the bulk of the additional medical

evidence. The ALJ wrote as follows:

> With respect to medical opinions, significant weight is given to the opinion of the State Agency physicians that the claimant was able to perform light work . . . with additional limitations of function . . . due to her headaches, seizure disorder, pain, and medication side effects. Dr. Kulkarni's opinions are that the claimant's symptoms frequently interfered with her attention and concentration, that she was able to perform seated work for just 2 or 4 hours in an eight-hour workday, that she was able to stand/walk for less than 1 hour to just 2 hours in an eight-hour workday, that she needed to be able to get up and move around as needed or that she needed to change position every 30 minutes, that she was able to lift and carry either nothing or just up to 5 pounds frequently and 10 pounds occasionally, that she would be absent at least 2 or more times per month, that she was only occasionally able to engage in gross and fine manipulative movements, that she was never or rarely able to reach, and that she would need to take unscheduled breaks lasting 5 minutes every 3 or 4 hours . . . . In an accompanying letter, Dr. Kulkarni noted the claimant suffers from epilepsy and lupus. These findings and statements (including nearly no lifting, no carrying, no reaching) are extreme and appear inconsistent with even normal activities of daily living including picking up toothbrushes, eating utensils, etc. Kulkarni's own notes and his letter, reflect ambulation without a device and normal upper and lower extremity bulk. Further, despite Kulkarni's findings, as noted per Dr. Von Bargen, the claimant denied depression and the claimant also denied the [sic] depression and anxiety at hearing. Further, Von Bargen found a pain disorder unlike Dr. Kulkarni. The claimant, at hearing, reported only three seizures since early 2014 and denied anti-seizure meds for the previous 7 years. The claimant denied lupus was an issue for her. These many factors significantly undermine any weight that could have been accorded to Dr. Kulkarni's opinion. Little weight is assigned to Kulkarni's medical source statement for these many reasons. Further, the functional capacity evaluation from September 2014 . . . is not supported by the many normal objective findings noted above, and diagnostic testing and so is accorded little weight. That functional capacity evaluation assessment was that the claimant was not able to work even part-time, that she was only occasionally able to sit, that she was able to stand or walk for only a few minutes at a time, and that she was not able to lift, push, carry, pull, or reach at all . . . . Such limitations are rather extreme in nature and not consistent with the claimant's reported ability to care for her personal needs, drive, fold laundry, or shop; nor are they consistent with her being the sole adult in her household and not seeking any mental health treatment. Further undermining the persuasiveness of Dr. Kulkarni are the unexplained inconsistencies in his opinions from October 2014 to February 2015. His opinions and the functional capacity evaluation assessment are also not supported by the claimant's lack of muscle atrophy and lack of significant deficits in muscle strength, sensation, grip strength, and fine finger manipulative ability.

Little weight is assigned to [Dr. Kulkarni's] assessments and opinions.

ALJ's Decision (Tr., pp. 34-35). The long and short of it is that the ALJ found Dr. Kulkarni's

opinions concerning Carnahan's physical impairments and limitations to be inconsistent with

(and therefore unsupported by) the rest of the medical evidence. The ALJ did not "discard" Dr.

Kulkarni's opinions, and even acknowledged that Carnahan suffered from many of the physical

impairments described in those opinions (as discussed below), but concluded that they were not

"persuasive" in light of the rest of the medical evidence, which supported a finding that Carnahan

was able to perform a range of light duty jobs. In addition, it is important to note that the ALJ

based his determination not just on the opinions of the non-treating physicians, but also on the

testimony of a vocational expert. The ALJ specifically acknowledged that Carnahan's "ability to

perform all or substantially all of the requirements of [the full range of light work] has been

impeded by additional limitations." Tr., p. 36. So, "[t]o determine the extent to which these

limitations erode the unskilled light occupational base, the [ALJ] asked the vocational expert

whether jobs exist in the national economy for an individual with [Carnahan's] age, education,

work experience, and residual functional capacity. The vocational expert testified that, given all

of these factors, the individual would be able to perform the requirements of representative

unskilled occupations such as an office helper . . . , mail clerk . . . , and router." *Id*. The ALJ

wrote that "[b]ased on the testimony of the vocational expert the undersigned concludes that,

considering the claimant's age, education, work experience, and residual functional capacity, the

claimant is capable of making a successful adjustment to other work that exists in significant

numbers in the national economy. A finding of 'not disabled' is therefore appropriate[.]" *Id*.

At the risk of being redundant, it bears noting again that this Court's task is to determine whether the ALJ's decision on this issue is supported by substantial evidence and, more specifically, whether his written decision "provide[s] a 'logical bridge' between the evidence and his conclusions." *O'Connor-Spinner*, 627 F.3d at 618. This Court is expressly prohibited from "reconsider[ing] facts, re-weigh[ing] the evidence, resolv[ing] conflicts in evidence, decid[ing] questions of credibility, or substitut[ing] its judgment for that of the ALJ[,]" *Visinaiz v. Berryhill*, 243 F.Supp.3d 1008, 1011 (N.D. Ind. 2017). The ALJ accorded less weight to Dr. Kulkarni's opinion after determining that the *weight of the evidence as a whole*, including the opinions of two non-treating physicians, the testimony of a vocational expert, and Carnahan's own testimony, was supportive of and consistent with his conclusion that Carnahan is capable of performing light duty work.

Carnahan's challenge is simply that the ALJ committed an error of law by not assigning controlling weight to her treating physician's opinion. She claims that since there is objective medical evidence that confirms many of her complaints (in the form of x-rays, MRIs and exams), Dr. Kulkarni's opinion that she is unable to perform even light duty work is "based on appropriate medical findings and uncontradicted by other substantial evidence in the record." Plaintiff's Brief, p. 10. But this is a conclusion, not an argument. While it is true (and undisputed) that some of Dr. Kulkarni's conclusions are supported by other medical evidence, at least with respect to some of her impairments, such as the degenerative problems in her neck and spine, the ALJ specifically noted those opinions and considered Dr. Kulkarni's findings when calculating Carnahan's residual functional capacity. *See* ALR's Decision (Tr., pp. 29-31). Carnahan's argument implies that since Dr. Kulkarni's findings were not *completely* or *wholly*

contradicted by other medical evidence, his opinion should have been accorded controlling weight–a legal conclusion for which Carnahan cites no authority. Carnahan's argument–that her treating physician's opinion concerning her level of impairment should have been given *controlling* weight since it wasn't rendered complete bunk by other evidence–is not supported by the facts of this case or the law.

Carnahan's argument is based on the general principle, stated in *Scrogham*, that an ALJ should give controlling weight to the opinion of a treating physician over those of non-treating physicians, but it ignores the fact that an ALJ has the discretion–and indeed the obligation–to accord *less* weight to that opinion if he concludes that it is inconsistent with or contradicted by the rest of the medical evidence. As the Commissioner notes, "the Seventh Circuit has repeatedly found that the opinions of State agency doctors may outweigh those of treating physicians when supported by substantial evidence." Commissioner's Response, p. 7 (citing *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) and *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007) ("[a]n ALJ . . . may discount a treating physician's medical opinion if the opinion 'is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability.'")). In this case, that was the ALJ's conclusion, and he explained his reasoning in his decision, as discussed above. This Court finds that the ALJ's decision to accord less weight to Dr. Kulkarni's opinions was supported by substantial evidence and therefore affirms the ALJ's decision on this issue.

**II. ALJ's assessment of Carnahan's testimony.**

Carnahan's second challenge to the ALJ's decision is her contention that the ALJ "failed

to properly evaluate Ms. Carnahan's testimony." Plaintiff's Brief, p. 11. Carnahan acknowledges that "[a] claimant must provide both subjective testimony and objective medical evidence to qualify for disability insurance benefits for allegations of disabling pain." *Id.*, pp. 11-12 (citing *Moothart v. Bowen*, 934 F.2d 114, 117 (7th Cir. 1991)). Carnahan notes that "[t]he ALJ here conceded Ms. Carnahan's 'medically determinable impairments could reasonably be expected to cause some of the alleged symptoms' but found her statements concerning the intensity, persistence, and limiting effects of her symptoms 'not entirely consistent with the medical and other evidence of record[.]'" *Id.*, p. 12 (quoting Tr., pp. 24-25). Carnahan seizes on the phrase "not entirely consistent" and argues that "[t]he ALJ's conclusion that Ms. Carnahan's statements must be 'entirely consistent' with all other evidence in the record to be credited . . . is not an accurate recitation of the law, as 20 C.F.R. § 404.1529 and § 416.929 require[] the ALJ to evaluate the validity of a claimant's statements against the entire record even when he finds the statements are not supported by objective medical findings." *Id.* And, argues Carnahan, "[t]he Seventh Circuit has . . . repeatedly held 'complaints of severe pain . . . need not be confirmed by diagnostic tests.'" *Id.* (quoting *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015)). Carnahan argues that "the fact that particular objective evidence did not explain all of Ms. Carnahan's subjective statements is not reason to discount them." *Id.*, p. 14.

Once again, Carnahan's argument does not carry the day, because once again she ignores the proverbial other side of the coin. While it is true, as Carnahan states, that a disability claimant's subjective testimony regarding her level of pain does not have to be "entirely consistent" with the objective medical evidence and should not necessarily be discounted if it's not, it is also well established–as the Seventh Circuit explained in *Engstrand*–that the courts

must "defer to an ALJ's credibility finding that is not patently wrong, *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015), [and] an ALJ still must competently explain an adverse-credibility finding with specific reasons 'supported by the record,' *Minnick* [*v. Colvin*], 775 F.3d [929,] 937 [7th Cir. 2015]. 'An erroneous credibility finding requires remand unless the claimant's testimony is incredible on its face or the ALJ explains that the decision did not depend on the credibility finding.' *Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014)." *Engstrand*, 788 F.3d at 660.

The Commissioner argues that the ALJ did not discount Carnahan's testimony only because it was not "entirely consistent" with the objective medical evidence nor because he found her testimony to be "incredible on its face." Rather, according to the Commissioner, he considered her testimony in light of the record as a whole and then concluded that her testimony regarding her pain level and its alleged disabling effects was not completely credible. The Commissioner points to specific findings and conclusions by the ALJ to support this argument and explains as follows:

> Spanning three pages, the ALJ's analysis of Plaintiff's subjective allegations initially found that some of Plaintiff's allegations were supported by the objective evidence (Tr. 24-26). The ALJ pointed out that her obesity, neck and back pain, and positive examination findings supported her claims of limitations in lifting, sitting, standing, and walking (Tr. 24). Upon closer inspection, however, the ALJ noted that generally mild MRI findings coupled with many negative examination findings did not support her allegations of disabling symptomatology to the degree alleged (Tr. 25). Likewise, the remainder of her complaints pertaining to migraine headaches and other impairments were not corroborated by her complaints to physicians, and appeared at most as intermittent, non-continuous, and non-lasting (Tr. 25-26). So while the ALJ credited many of Plaintiff's symptoms, he did not find her incapable of performing a reduced range of light work (Tr. 23).

Commissioner's Response, pp. 8-9.

A claimant challenging an ALJ's credibility determination faces an almost Sisyphean burden. The Seventh Circuit, addressing this specific issue, explained as follows:

> . . . Social Security Ruling 96-7p . . . governs the assessment of an applicant's credibility. "Because the ALJ is in the best position to observe witnesses, we will not disturb [his] credibility determinations as long as they find some support in the record." *Dixon* [*v. Massanari*], 270 F.3d [1171,] 1178-79 [7th Cir. 2001]. Accordingly, "'[w]e will reverse an ALJ's credibility determination only if the claimant can show it was patently wrong.'" *Jens* [*v. Barnhart*], 347 F.3d [209,] 213 [7th Cir. 2003] (quoting *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000)).

*Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007). In *Schmidt*, a case that is on point in many respects,[2] the plaintiff challenged an ALJ's conclusion that her testimony concerning her pain level was not credible because it was not supported by the objective medical evidence. The district court affirmed the ALJ's decision, as did the Seventh Circuit, which explained as follows:

> Here, contrary to Schmidt's assertions, the ALJ specifically stated in his opinion that he considered Schmidt's testimony and the entire records under Social Security Ruling 96-7p and 20 C.F.R. § 404.1529. The ALJ then summarized Schmidt's testimony, in particular her assertions of pain and the limitations she claimed as a result of her impairments. After discussing Schmidt's testimony and the medical evidence in the record, the ALJ stated that Schmidt's "allegations of disabling pain and incapacitating limitations [were] not consistent with or supported by the objective medical record of treating and examining physicians," in addition to reiterating that "the objective findings do not support the level of chronic pain asserted by [Schmidt]." These conclusions were supported by evidence in the medical record indicating that Schmidt regularly exhibited normal

---

[2] Ms. Schmidt also challenged the ALJ's decision not to give controlling weight to her treating physicians' opinions, which indicated that she was unable to perform even sedentary work. Instead, the ALJ discounted those opinions after concluding that they were inconsistent with objective medical evidence. Both the district court and the Seventh Circuit affirmed the ALJ on this issue also, holding that "the ALJ provided an adequate explanation of his decision not to give controlling weight to [the treating physicians'] opinions[]" and that "the ALJ's decision not to accord controlling weight to [the treating physicians'] opinions was reasonable and that the ALJ sufficiently articulated the reasons for his decision." *Schmidt*, 496 F.3d at 842, 844.

neurological findings, strength, reflexes, and sensation. In short, the diagnostic evidence in Schmidt's medical records conflicts with testimony and claims of disabling pain. Further, Schmidt's medical history indicates that she voluntarily discontinued physical therapy and declined to pursue pain management, both of which cast doubt on the severity of Schmidt's pain and her need to alleviate it. The ALJ also noted that while Schmidt claimed in her brief that her daily activities were "minimal," the record indicated that she engaged in significant daily activities, including working part-time as a bookkeeper, attending college classes, spending time with her granddaughter, babysitting, performing household chores, preparing meals, taking vacations, socializing with family and friends, driving, and reading. Finally, the ALJ did not totally discount Schmidt's testimony regarding how her pain affected her ability to perform certain activities, as evinced by the ALJ's decision to limit Schmidt's range of work to sedentary when assessing her residual functional capacity. Accordingly, we find that the ALJ provided sufficient reasons for his finding that Schmidt's allegations regarding her limitations were not fully credible, and we will not disturb those findings.

*Schmidt v. Astrue*, 496 F.3d at 843-44.

The result is the same in the present case. The ALJ considered the record in its entirety, acknowledged that the medical evidence *supported* many of Carnahan's complaints, made a credibility determination about Carnahan's testimony in light of the rest of the evidence, and ultimately concluded–based on his review of the entire record–that Carnahan's impairments do not preclude her from a wide range of light duty work. The ALJ explained in his decision that "[i]n making this finding [of non-entitlement to benefits] the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and 416.929 and SSR 96-4p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." Tr., p. 29. But the ALJ did not just recite the applicable standard of review and then render his decision. He elaborated as follows:

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments *could reasonably be expected to cause some of the alleged symptoms*. The record reflects that the claimant's mass body index has ranged from about 31 to 38 since the amended alleged onset date. Thus, she is severely obese. In addition, she suffers from nonconvulsive seizures and migraines, for which she has taken various medications . . . . She also suffers from a severe chronic pain disorder. Furthermore, she has neck and back pain and the record contains imaging study evidence (including x-rays in December 2013 and MRI studies done in November 2013 and March 2015) of abnormalities in her cervical and lumbar spine[.] . . . She has undergone lumbar spine surgery (prior to the alleged onset date), received physical therapy, used a heating pad, received numerous steroid injections . . . , had L1-3 and C4-7 medial branch blocks, undergone C4-7 medial branch radiofrequency ablation, seen a pain specialist frequently, is being considered for a spinal cord stimulator, and has taken various types and dosages of medications[.]"

Tr., p. 30 (italics added). Then, the ALJ addresses the issue of Carnahan's credibility:

However, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical and other evidence of record. The record reflects that, since the amended alleged onset date, the claimant's physical examination findings have been largely within normal limits, except for obesity . . . , decreased reflexes in her upper and lower extremities, tenderness over her left sternocleidomastoid and trapezius muscles, decreased range of motion in her neck and back, mild head tremor, cranial and TMJ tenderness, tenderness over her neck and back, positive Spurling's, positive SLR, an antalgic gait at times, positive FABER, and muscle spasms in her next. She has not exhibited any muscle atrophy or deficits in sensation, grip strength or fine finger manipulative ability and her muscle strength in her extremities was graded, at worst, a "4" out of "5[.]"

*Id*., p. 31. The ALJ went on to discuss many more details of Carnahan's complaints and the objective medical evidence (*see id*., pp. 31-34), which need not be repeated now. What is determinative is that the ALJ in this case heard and considered Carnahan's testimony in the context of the entire record, as he is obligated to do, and made a credibility determination regarding that testimony, as he is also obligated to do, and then explained his reason for discounting *part* of that testimony (which just happened to be the part when Carnahan testified as

to the severity and disabling nature of her symptoms). Carnahan is understandably upset that the ALJ didn't "entirely" believe her testimony, given that she was denied benefits in part for that reason. But the ALJ did what he was supposed to do and explained his reasoning thoroughly. Accordingly, the decision of the ALJ on this issue is affirmed.

In this case the ALJ, in accordance with his duty, made his findings and conclusions after reviewing the objective medical evidence, considering the subjective testimony of the claimant, and considering the testimony of a vocational expert. Most importantly, he applied the proper standards of review and based his conclusions on substantial evidence–as he explained in careful detail in his decision.

## CONCLUSION

For the reasons discussed above, the decision of the Administrative Law Judge denying the award of benefits to the Plaintiff is **AFFIRMED.**


Date: November 6, 2017.

  /s/   William C. Lee   
William C. Lee, Judge
United States District Court
Northern District of Indiana
